## UNITED STATES DISTRICT COURT
## DISTRICT OF KANSAS

| | |
|---|---|
| CLARENCE MCANULLA<br>    *Plaintiff,* | )<br>)<br>) |
| v. | )<br>) |
| KONINKLIJKE PHILIPS N.V.; PHILIPS<br>NORTH AMERICA LLC; and PHILIPS RS<br>NORTH AMERICA LLC,<br>    *Defendants.* | )<br>)<br>)<br>) |

Plaintiff Clarence McAnulla. ("Plaintiff"), on behalf of himself, files the Complaint against Defendants Koninklijke Philips N.V. ("Royal Philips"), Philips North America LLC ("Philips NA"), and Philips RS North America LLC ("Philips RS") (collectively Royal Philips, Philips NA, and Philips RS are "Philips" or the "Defendants"), and alleges the following:

### PARTIES

1. Plaintiff is a resident of the state of Kansas, residing at 81 NE 25 Road, Great Bend, Kansas.

2. Defendant Royal Philips is a Dutch multinational corporation with its principal place of business located in Amsterdam, Netherlands. Royal Philips is the parent company of the Philips Group of healthcare technology businesses, including Connected Care businesses focusing on Sleep & Respiratory Care. Royal Philips holds directly or indirectly 100% of its subsidiaries Philips NA and Philips RS. Upon information and belief, Royal Philips controls Philips NA and Philips RS in the manufacturing, selling, distributing, and supplying of the recalled CPAP, Bi-Level PAP, and mechanical ventilator devices.

3. Defendant Philips NA is a Delaware corporation with its principal place of business located at 222 Jacobs, Street, Floor 3, Cambridge, Massachusetts 02141. Philips NA is a

wholly-owned subsidiary of Royal Philips.

4. Defendant Philips RS is a Delaware corporation with its principal place of business located at 6501 Living Place, Pittsburgh, Pennsylvania 15206. Philips RS is a wholly-owned subsidiary of Royal Philips. Philips RS was formerly operated under the business name Respironics, Inc. ("Respironics"). Royal Philips acquired Respironics in 2008.

## JURISDICTION AND VENUE

5. This Court has subject-matter jurisdiction pursuant to 28 U.S.C. §1332(a).

6. Venue is appropriate in this Court.

7. The court has personal jurisdiction over the Defendants because Defendants conduct substantial business in this District, and the events giving rise to Plaintiff's claims arise out of and relate to Defendants' contacts with this District. Further, Defendants have transacted business, maintained substantial contacts, purposefully targeted consumers and medical professionals for sales of its devices and/or committed overt acts in furtherance of the unlawful acts alleged in this complaint in this District, as well as throughout the United States. The unlawful acts of Defendants have been directed at, targeted, and have had the effect of causing injury to persons residing in, located in, or doing business in this District, as well as throughout the United States.

## FACTUAL BACKGROUND

8. Prior to becoming disabled, Plaintiff made his living as a commercial truck driver.

9. Plaintiff suffers from sleep apnea, a breathing disorder that is characterized by repeated breathing disruptions during sleep.

10. As a result of his sleep apnea, Plaintiff utilizes a therapy known as Continuous Positive Airway Pressure ("CPAP"), or CPAP therapy.

11. In or around August of 2016, Plaintiff purchased a DreamStation Auto CPAP, Model# DSX500T11, Serial No. J16695325122F, device that he has used nightly for CPAP

therapy when he is not sleeping in his commercial truck.

12. In or around January of 2017, Plaintiff purchased a DreamStation Auto CPAP, Model# DSX500H11C, Serial No. J179263494CEE, device that he has used nightly when he is sleeping in his commercial truck.

13. One of the two CPAP machines identified in paragraphs 11 and 12 have been used by Plaintiff every night since purchase and have also been used periodically during daytime naps.

14. The CPAP machines utilized by Plaintiff were sold, designed, manufactured and/or marketed by Defendants.

15. On April 26, 2021, Defendants made a public announcement disclosing they had determined there were risks that the PE-PUR Foam used in certain CPAP, Bi-Level PAP, and mechanical ventilator devices it manufactured may degrade or off-gas under certain circumstances.

16. On June 14, 2021, Royal Defendants issued a recall in the United States of its CPAP, Bi-Level PAP, and mechanical ventilator devices containing PE-PUR Foam, because Defendants had determined that (a) the PE-PUR Foam was at risk for degradation into particles that may enter the devices' pathway and be ingested or inhaled by users, and (b) the PE-PUR Foam may off-gas certain chemicals during operation. Defendants further disclosed in their Recall Notice that "these issues can result in serious injury which can be life-threatening, cause permanent impairment, and/or require medical intervention to preclude permanent impairment."

17. Defendants have disclosed that the absence of visible particles in the devices does not mean that PE-PUR Foam breakdown has not already begun. Defendants reported that lab analysis of the degraded foam reveals the presence of harmful chemicals, including: Toluene

Diamine

("TDA"), Toluene Diisocyanate ("TDI"), and Diethylene Glycol ("DEG").

18.     Prior to issuing the Recall Notice, Defendants received complaints regarding the presence of black debris/particles within the airpath circuit of its devices (extending from the device outlet, humidifier, tubing, and mask). Defendants also received reports of headaches, upper airway irritation, cough, chest pressure, and sinus infection from users of these devices.

19.     In its Recall Notice, Defendants disclosed that the potential risks of particulate exposure to users of these devices include: irritation (skin, eye, and respiratory tract), inflammatory response, headache, asthma, adverse effects to other organs (*e.g.*, kidneys and liver) and toxic

carcinogenic affects. The potential risks of chemical exposure due to off-gassing of PE-PUR Foam in these devices include: headache/dizziness, irritation (eyes, nose, respiratory tract, skin), hypersensitivity, nausea/vomiting, toxic and carcinogenic effects.

20.     Defendants recommended that patients using the recalled CPAP and Bi-Level PAP devices immediately discontinue using their devices and seek other options for respiratory care.

21.     Plaintiff received a Notice advising him that the Philips' Respironics CPAP devices he was utilizing were subject to a recall due to the presence of a dangerous PE-PUR Foam that could cause him to suffer from adverse health effects, including, *inter alia*, cancer and organ failure. Plaintiff was advised to discontinue use of the devices. Plaintiff was also advised to verify whether his devices were subject to the recall by submitting the serial number for his devices to an online database Defendants established. Plaintiff received confirmation that Plaintiff's CPAP devices was subject to recall.

22.     Plaintiff has been diagnosed with lung cancer since he began using the

4

Defendant's CPAP devices. Plaintiff's lung cancer was caused by the degradation of PE-PUR Foam used in the CPAP devises and by the off gassing of chemicals from the PE-PUR Foam which occurs during operation of the CPAP devises.

## DISOVERY RULE TOLLING

23. Plaintiff had no way of knowing about Defendants' conduct with respect to the health risks associated with the use of the machines prior to the recall notice issued by Defendants.

24. Plaintiff could not, through the exercise of reasonable care, have discovered the conduct of Defendants as alleged herein. Further, Plaintiff did not discover and did not know of facts that would have caused a reasonable person to suspect that Defendants were engaged in the conduct alleged herein.

25. For these reasons, all applicable statutes of limitations have been tolled by the discovery rule with respect to claims asserted by Plaintiff.

## CLAIMS FOR RELIEF
,
## COUNT I

### BREACH OF EXPRESS WARRANTY

26. Plaintiff incorporates the foregoing allegations as if fully set forth herein.

27. Defendants marketed and sold Plaintiff's CPAP machines into the stream of commerce with the intent that the machines would be purchased by Plaintiff.

28. Defedants expressly warranted, advertised, and represented to Plaintiff that the machines were safe and appropriate for human use.

29. Defendants made these express warranties regarding the machines quality and fitness for use in writing through its website, advertisements, and marketing materials, and on the machines' packaging and labels. These express warranties became part of the basis of

5

the bargain that Plaintiff entered in to upon purchasing the machines.

30. Defendants' advertisements, warranties, representations, and omissions regarding health risks associated with the machines were made in connection with the sale of the machines to Plaintiff. Plaintiff relied on Defendants' advertisements, warranties, representations, and omissions regarding the machines in deciding whether to purchase and use Defendants' machines.

31. Defendants' machines do not conform to Defendants' advertisements, warranties, representations, and omissions in that they are not safe, healthy, and appropriate for human use, and pose risks of serious injury and disease, including organ failure and cancer.

32. Defendants' breached their express warranties by placing the machines into the stream of commerce and selling them to consumers, when their use posed health risks, had dangerous effects and were unsafe, rendering these products unfit for their intended use and purpose, and unsafe and unsuitable for consumer use as marketed by Defendants.  These associated health effects substantially impair the use, value, safety of the machines and render them worthless.

33. Defendants were aware, or should have been aware, of the toxic or dangerous health effects of the use of the machines, but nowhere on the package labeling or package inserts or on Defendants' websites or other marketing materials did Defendants warn Plaintiff that they were at risk of developing adverse health effects as a result of the dangerous PE-PUR Foam used in the machines.

34. Defendants concealed the dangerous health effects of the PE-PUR Foam used in the machines and deceptively represented that these products were safe, healthy, and appropriate for use. Defendants thus utterly failed to ensure that the material representations they were making to consumers were true.

35. The adverse health effects associated with use of the machines existed when the machines left Defendants' possession or control and were sold to Plaintiff. The dangers associated with use of the machines were undiscoverable by Plaintiff at the time of purchase of the machines.

36. As manufacturers, marketers, advertisers, distributors, and sellers of the machines, Defendants had exclusive knowledge and notice of the fact that the machines did not conform to the affirmations of fact and promises.

37. In addition, or in the alternative, to the formation of an express contract, Defendants made each of the above-described representations and omissions to induce Plaintiff to rely on such representations and omissions.

38. Defendants' affirmations of fact and promises and their omissions were material, and Plaintiff reasonably relied upon such representations and omissions in purchasing and using the machines.

39. All conditions precedent to Defendants' liability for its breach of express warranty have been performed by Plaintiff.

40. As a direct and proximate result of Defendants' breaches of express warranty, Plaintiff has been damaged because he did not receive the products as specifically warranted by Defendants. Plaintiff did not receive the benefit of the bargain and suffered damages at the point of sale stemming from his overpayment for the machines.

41. Plaintiff seeks actual damages, attorneys' fees, costs, and any other just and proper relief available thereunder for Defendants' failure to deliver goods conforming to their express warranties and resulting breach.

## COUNT II
## BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY

42. Plaintiff incorporates the foregoing allegations as if fully set forth herein.

43. Defendants are merchants engaging in the sale of goods to Plaintiff.

44. There was a sale of goods from Defendants to Plaintiff, namely the machines.

45. At all times mentioned herein, Defendants manufactured or supplied the machines, and prior to the time the machines were purchased by Plaintiff, Defendants impliedly warranted to him that the machines were of merchantable quality, fit for their ordinary use, and conformed to the promises and affirmations of fact and omissions made on the machines labels and packaging, including that the machines were safe and appropriate for human use. Plaintiff relied on Defendants' promises and affirmations of fact and omissions when he purchased and used the machines.

46. Contrary to these representations and warranties, the machines were not fit for their ordinary use and did not conform to Defendants' affirmations of fact and promises and omissions because use of the machines is accompanied by the risk of adverse health effects, which does not conform to the labels and packaging of these devices.

47. Defendants breached their implied warranties by selling machines that failed to conform to the promises or affirmations of fact made on the packaging or label, as use of each of the machines was accompanied by the risk of developing adverse health effects that do not conform to the packaging or label.

48. Defendants were on notice of this breach, as it was made aware of the adverse health effects accompanying use of the machines through user reports submitted to Defendants and trough lab testing.

49. Privity exists because Defendants impliedly warranted to Plaintiff through the

warranting, packaging, advertising, marketing, and labeling that the machines were natural, and suitable for use to treat health conditions, and made no mention of the attendant health risks associated with use of the machines.

50. As a direct and proximate result of Defendants' conduct, Plaintiff has suffered actual damages in that each machines he purchased is worth less than the price he paid. Further, Plaintiff would not have purchased the machines had he known of the attendant health risks associated with the use of the machines.

51. Plaintiff seeks actual damages, attorneys' fees, costs, and any other just and proper relief available thereunder for Defendants' failure to deliver goods conforming to their implied warranties and resulting breach.

## COUNT III
## NEGLIGENCE

52. Plaintiff incorporates the foregoing allegations as if fully set forth herein.

53. Defendants had a duty to Plaintiff to exercise reasonable and ordinary care in the developing, testing, manufacture, marketing, distribution, and sale of the machines.

54. Defendants breached their duty to Plaintiff by developing, testing, manufacturing, advertising, marketing, distributing, and selling machines to Plaintiff that contained PE-PUR Foam, which posed a risk for degradation into particles that may enter the devices' pathway and be ingested or inhaled by users such as Plaintiff and which may off-gas certain chemicals during operation.

55. Defendants knew or should have known that the qualities and characteristics of the machines were not as advertised or suitable for their intended purpose and were otherwise not operating as designed by Defendants.

56. Defendants knew or should have known that due to their negligent development,

testing, manufacturing, advertising, marketing and distributing of the machines, the use of the machines posed substantial health risks to users, such as Plaintiff.

57. As a direct and proximate result of Defendants' conduct, Plaintiff has suffered actual damages in that he purchased machines (a) that were worth less than the price he paid, (b) which he would not have purchased at all had he known they contained PE-PUR Foam that could cause users of the machines to suffer adverse health effects, and (c) which do not conform to the products' labels, packaging, advertising, and statements.

58. Plaintiff seeks actual damages, attorneys' fees, costs, and any other just and proper relief available.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, prays for judgment against Defendants as to each and every count, including:

A. An order declaring that Defendants' actions constitute: (i) breach of express warranty; (ii) breach of implied warranty of merchantability; (iii) negligence; and that Defendants are liable to Plaintiff, as described herein, for damages arising therefrom;

B. A judgment awarding Plaintiff all appropriate damages in an amount to be determined at trial;

C. A judgment awarding Plaintiff and the Class prejudgment and post-judgment interest, as permitted by law;

D. A judgment awarding Plaintiff costs and fees, including attorneys' fees, as permitted by law; and

E. Grant such other legal, equitable or further relief as the Court may deem just and proper.

## **DEMAND FOR JURY TRIAL**

Plaintiff demands a trial by jury for all issues so triable.

**RESPECTFULLY SUBMITTED:**

**KING, BRENNAN & ALBIN, LLC**

*/s/ Sean C. Brennan*
Sean C. Brennan, #19915
833 N. Waco Ave.
Wichita, KS  67203
316-263-0505
Facsimile:  316-263-2128
sbrennan@kbafirm.com
*Attorney for Plaintiff*